IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALLIED ERECTING AND DISMANTLING CO., )
INC., )
              Plaintiff, )
)
vs ) Civil Action No. 16-1379
) Judge Cercone
UNITED STATES STEEL CORPORATION, ) Magistrate Judge Mitchell
              Defendant. )

I.     Recommendation

It is respectfully recommended that the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404 filed by defendant, United States Steel Corporation (ECF No. 8) be granted and that this action be transferred to the United States District Court for the Northern District of Ohio, Eastern Division, based on its relatedness to Civil Action No. 4:12-cv-1390 and Bankruptcy Case No. 4:16-bk-40675.

II.    Report

Plaintiff, Allied Erecting and Dismantling Co., Inc. (Allied), brings this action against Defendant, United States Steel Corporation (U.S. Steel), alleging that it breached various agreements pursuant to which Allied would have dismantled numerous plants owned by U.S. Steel across the United States. Plaintiff seeks compensation for work performed and for work that it was not given the opportunity to perform pursuant to its agreements with U.S. Steel.

Currently pending before the Court is U.S. Steel's motion to transfer venue to the United States District Court for the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the motion should be granted.

Facts

Allied is an industrial dismantling contractor that has performed work for U.S. Steel at

numerous locations throughout the United States for over 30 years. (Compl. ¶¶ 1, 5.)[1] Allied and U.S. Steel were parties to a previous lawsuit in this Court, Case No. 93-cv-575, relating to a number of disputes at various U.S. Steel project sites. During a trial held before Judge Diamond in 2003, the parties settled the litigation and entered into three agreements pursuant to which Allied was to perform further dismantling work for U.S. Steel. Specifically, they entered into two Agreements in Principle (AIPs): a 2003 AIP and a 2004 AIP; they also entered into a Dismantling Service Agreement (DSA) in 2004. Over the next several years, Allied performed over 700 dismantling projects for U.S. Steel under these agreements. In 2010, the parties entered into a new DSA, which extended Allied's right to perform all of U.S. Steel's dismantling work across the country on a "last look" basis until December 31, 2015. (Compl. ¶¶ 6-9.)

The parties encountered difficulty regarding a Sheet and Tin Project at U.S. Steel's Fairless Works site in Fairless Hills, Pennsylvania. Instead of taking three years to perform as initially agreed upon, the project took Allied over seven years and was much more costly as a result of various delays, which Allied alleges were directly caused by U.S. Steel. On December 14, 2011, Allied submitted a formal claim to U.S. Steel regarding the additional costs it incurred on the Fairless Works project. Allied alleges that, in retaliation for the filing of this claim and the subsequent lawsuit over it, U.S. Steel undertook a course of action to deny Allied's existing and continuing contract rights under the 2003 AIP (relating to Fairless) and the 2010 DSA by: denying Allied's last look rights under the 2010 DSA for barge and railcar work, denying Allied's last look rights on various other dismantling projects under the 2010 DSA, refusing to pay Allied for work performed and invoices submitted, refusing to compensate Allied for valid additional compensation requests on several project sites, and insisting that Allied perform

---

[1] ECF No. 1.

certain work at the Fairless Works at "no cost" despite the fact that U.S. Steel had previously compensated Allied for similar work prior to the submission of the Fairless claim and the filing of the 2012 case. (Compl. ¶¶ 10-12.)[2]

The Ohio Litigation

In 2012, Allied filed a complaint against U.S. Steel in the Northern District of Ohio, which was docketed at No. 4:12-cv-1390 ("the Ohio Litigation"). In that case, Allied alleged that U.S. Steel breached the parties' 2003 AIP, the 2004 DSA and the 2010 DSA by failing to award Allied dismantling work, failing to honor Allied's "last look" rights, failing to pay Allied for work performed, and delaying and disrupting Allied's work at numerous U.S. Steel facilities, including Clairton Works, Edgar Thompson Works, Fairless Works, Gary Works, Granite City Works and Great Lakes Works. (ECF No. 9 Ex. A.) Defendant notes that, in the Ohio Litigation, Allied specifically averred that venue was proper in the Northern District of Ohio. (ECF No. 9 Ex. A ¶ 4.)

Defendant states that:

> The …Ohio Litigation involved extensive written discovery, voluminous document discovery, and approximately 25 depositions. The case also required Judge Sara Lioi to interpret what she termed "a jigsaw puzzle of contracts" in issuing a litany of rulings on, among other things, a motion to dismiss, a motion for summary judgment (and reconsideration request), motions in limine, a motion for directed verdict, as well as post-trial motions seeking declaratory relief, prejudgment interest, to amend the jury's verdict, and to stay execution of judgment. See Ohio Litigation, Doc. Nos. 84, 174, 221, 249, 296, 312, 313, 368, 371. All told, the … Ohio Litigation docket reflects almost 400 entries. In the end, U. S. Steel was awarded a $10.6 million judgment against Allied, notwithstanding the fact that Allied originally sued U. S. Steel and sought over $40 million in damages. Ohio Litigation, Doc. No. 369.

(ECF No. 9 at 2) (footnotes omitted). Defendant has attached Judge Lioi's opinions and orders

---

[2] What the Complaint does not reveal is that the "2012 case" was filed in the United States District Court for the Northern District of Ohio, the venue to which Defendant seeks to transfer this case based on its relatedness thereto. This is discussed below.

3

on numerous motions that were filed in the Ohio Litigation. (Id. at 2 n.2 & Exs. B-J.) The only matter still pending in the Ohio Litigation is U.S. Steel's Bill of Costs; the remainder of the case is on appeal to the Court of Appeals for the Sixth Circuit. (Id. at 2 n.3.)

Procedural History

Plaintiff filed this action on September 6, 2016 (ECF No. 1). Jurisdiction is based on diversity of citizenship, in that: Allied is an Ohio corporation with its principal place of business in Youngstown, Ohio; U.S. Steel is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania; and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). (Compl. ¶¶ 1-3.) Plaintiff asserts that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this district. (Compl. ¶ 4.)[3]

Counts I though V of the Complaint all allege breaches of the various agreements between the parties, as follows: Count I alleges that U.S. Steel failed to honor Allied's last look rights under the 2010 DSA in connection with 19 projects at numerous work sites; Count II alleges that U.S. Steel breached a stipulation entered into on May 14, 2015 in the Ohio Litigation; Count III seeks compensation for dismantling work at various U.S. Steel sites, including Gary, Indiana, Great Lakes, Michigan and Minntac, Minnesota; Count IV alleges that pursuant to the 2010 DSA, Allied performed and completed dismantling work at three projects (two at Great Lakes and one at Gary), but U.S. Steel has wrongfully refused to pay for this work; and Count V alleges that U.S. Steel breached the 2003 AIP and the 2004 DSA relating to dismantling work at the Fairless Works site.

---

[3] Curiously, Plaintiff checked the box on the Civil Cover Sheet indicating that "This case is not related to a pending or terminated case" (ECF No. 1-1 at 2), despite acknowledging that this case "originally stems from" the 1993 action in this Court (ECF No. 19 at 2).

On October 6, 2016, Defendant filed a motion to transfer venue (ECF No. 8). Plaintiff filed a response to the motion on November 1, 2016 (ECF No. 19). On November 15, 2016, Defendant filed a reply brief (ECF No. 23).

Standard of Review

Section 1404(a) of Title 28 of the United States Code states that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a)[4]. Thus, resolution of a transfer motion requires three steps: 1) determine whether the proposed transferee court is a venue where the action "might have been brought" under the federal venue statute; 2) evaluate the relevant "private factors" relating to "the convenience of parties and witnesses"; and 3) examine the "public factors" relating to "the interest of justice" and weigh them to determine if the action should be transferred. Shutte v. Armco Steel Corp., 431 F.2d 22, 24-25 (3d Cir. 1970); Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). See In re Volkswagen of America, Inc., 545 F.3d 304, 312, 314 (5th Cir. 2008) (en banc).

Where the Action Could Have Been Brought

Defendant argues that this action could have been brought in the Northern District of Ohio because "a substantial part of the events or omissions giving rise to the claim occurred" there, inasmuch as Plaintiff has its principal place of business there and it is likely the location where the contracts that form the basis for all of its claims were executed and, in part, performed.

---

[4] On November 1, 2016, Plaintiff filed a motion to request oral argument on the motion to transfer venue (ECF No. 22). On November 15, 2016, Defendant filed a response indicating that it did not believe oral argument was necessary, but would participate if the Court believes it would be helpful. Upon review, the Court finds this matter appropriate for resolution on the briefs and does not believe oral argument would be helpful.

28 U.S.C. § 1391(b)(2). Defendant notes that the only new claim in this case relates to a stipulation that the parties negotiated and executed before Judge Lioi in the Ohio Litigation. (Compl. ¶¶ 21-30; ECF No. 9 Ex. K.) In addition, Defendant contends that, because Allied has filed for bankruptcy in the Northern District of Ohio, this action could have been commenced there as "related to" the bankruptcy case, No. 4:16-bk-40675. 28 U.S.C. § 1409(a).

Plaintiff disputes the first argument, responding that the performance of the contracts at issue did not occur in Ohio and the contracts were not negotiated or executed there. Rather, they were negotiated and executed in this Court during the settlement negotiations in 2003. (Ramun Decl. ¶¶ 4-5.)[5] Moreover, Count II concerns railcars and barges located in Alabama, Pennsylvania, Michigan, Minnesota and Indiana, but not Ohio. (Ramun Decl. ¶ 7.) However, it has not responded to Defendant's argument about § 1409.

In a reply brief, Defendant argues that Allied filed the Ohio Litigation, which also involved projects outside the Northern District of Ohio, in that district and that it has not explained why the 2012 case was properly venued in that district but this case could not be venued there. However, Defendant cites no authority for this argument. It was U.S. Steel's burden to argue in the Ohio Litigation that the Northern District of Ohio was an improper venue or that the case should be transferred elsewhere. A review of the docket sheet in that case reveals that U.S. Steel never filed a motion relating to venue in that case, and thus it forfeited such an argument by not making it.

Section 1409 of Title 28 provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a). The Court of Appeals has held that "a proceeding is 'related to'

---

[5] ECF No. 20.

a bankruptcy case if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006) (quoting In re Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). Defendant argues that, although it contests Plaintiff's claims, the lawsuit could result in a net recovery by Allied and thereby increase the assets of the bankruptcy estate. As noted above, in its brief, Plaintiff has not responded to this argument.[6]

Defendant has demonstrated that, pursuant to § 1409, this action could have been filed in the Northern District of Ohio. Therefore, the next issue is whether the weighing of appropriate factors means that the case should be transferred the case to that district.

Deference to Plaintiff's Chosen Venue

Ordinarily, a court must "give some weight to the plaintiffs' choice of forum." Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 134 S.Ct. 568, 581 n.6 (2013) (citing Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955)). "The burden for establishing the need for transfer still rests with the movant … [and] in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." Jumara, 55 F.3d at 879 (citations omitted).

Plaintiff argues that a strong presumption applies here and that its choice of forum is entitled to "paramount consideration." Shutte, 431 F.2d at 25. However, this argument is flawed in that it is based on a formulation that first appeared in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947), but that case was decided under the doctrine of forum non conveniens. The Supreme

---

[6] In its Response in Opposition to Defendant's motion, Plaintiff observes that Defendant has not requested that this action be transferred to the Bankruptcy Court for the Northern District of Ohio, but rather to Judge Lioi of the District Court. It further remarks that § 1409 does not require it to bring this action in the Northern District of Ohio, nor does it require the Court to transfer the case to that district. (ECF No. 18 ¶ 8.) However, neither of these statements is responsive to Defendant's argument that, pursuant to § 1409, this action could have been filed in the Northern District of Ohio.

Court has made clear that: "District courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of forum non conveniens." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981). See also Norwood, 349 U.S. at 32 ("Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience.") See In re Volkswagen, 545 F.3d at 313-15 (district court erred in requiring the defendant to show that the § 1404(a) factors substantially outweighed the plaintiff's choice of venue, improperly applying the stricter forum non conveniens standard). In addition, if a plaintiff's choice of forum were always entitled to "paramount consideration," it would make no sense to list the defendant's preference as a factor to be weighed, Jumara, 55 F.3d at 879, because by definition in any venue transfer situation the defendant will have moved to transfer the case to a venue that the plaintiff does not favor.

The Supreme Court has held that: "When the plaintiff's choice is not its home forum … the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007) (quoting Piper Aircraft Co., 454 U.S. at 255-56). This principle applies whether the plaintiff is a resident of another state or a foreign country. See High River Ltd. P'ship v. Mylan Labs., Inc., 353 F. Supp. 2d 487, 498-99 (M.D. Pa. 2005) (plaintiff, which was organized under the laws of Delaware and had its principal place of business in New York, brought suit in the Middle District of Pennsylvania, so its choice of forum was entitled to less weight); Bannister v. Wal-Mart Stores East, L.P., 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012) (Virginia residents' choice of forum in North Carolina entitled to less weight).

Plaintiff is an Ohio resident. Plaintiff has not explained why filing suit in this forum, where it does not reside, demonstrates that litigating here is more convenient for it. In fact, it

states that its principal place of business in Youngstown is located halfway between this courthouse and the courthouse in Akron to which Defendant moves to transfer the case. Somewhat oddly, it contends that "it is not more convenient for Allied to litigate this dispute in the Northern District." (ECF No. 19 at 15.) The fact that Allied's principal place of business is located equidistant between Pittsburgh and Akron suggests that it would be equally inconvenienced by having to travel to litigate in either forum. And it did file the Ohio Litigation in the very forum it claims in this case to be inconvenient. But it has not proffered any reason for choosing this forum instead of the equidistant Ohio court.[7] See Iragorri v. United Techs. Corp., 274 F.3d 65, 71-72 (2d Cir. 2001) (en banc) ("The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice.") Thus, even if the Court accepted Plaintiff's argument that its choice of venue must be accorded substantial weight (when it does not reside in this district), that would still have no bearing on the Jumara factor of convenience to the plaintiff.

Plaintiff also argues that a defendant's preference weighs in favor of transfer only when the defendant seeks to transfer the action to its home forum, which is not the situation in this case. However, the case it cites in support of this position, Mitel Networks Corp. v. Facebook, Inc., 843 F. Supp. 2d 463, 470 (D. Del. 2013), merely observed that Facebook sought transfer to its home forum and that this factor weighed in favor of transfer. The court did not hold that this is a necessary condition.

Nor does the law support this proposition. See, e.g. In re Link_A_Media Devices Corp.,

---

[7] Plaintiff does note that its counsel is based in this district and argues that it would be less costly to litigate the matter here. (Ramun Decl. ¶ 11.) However, "the convenience of counsel in a matter is not a relevant factor." Kisano Trade & Invest Ltd. v. Lemster, 737 F.3d 869, 876 (3d Cir. 2013).

662 F.3d 1221, 1223-24 (Fed. Cir. 2011) (plaintiff brought suit in the District of Delaware and LAMD moved to transfer the case to the Northern District of California, where it had its principal place of business and employed nearly all of its workers, and the court – relying upon cases from the Third Circuit – held that the district court erred in relying heavily on the fact that LAMD was incorporated in Delaware in denying its motion). Indeed, as noted below, a defendant's preferred venue is listed as a factor for a court to take into consideration on a transfer motion, but a defendant's principal place of business (like a defendant's state of incorporation) is not. Therefore, Plaintiffs' choice of this forum is entitled to less deference than it would otherwise receive, that is, some degree of deference but not "enhanced deference" or "paramount consideration." Pittsburgh Logistics Sys., Inc. v. C.R. England, Inc., 2010 WL 170403, at *3 (W.D. Pa. Jan. 14, 2010). Defendant's forum choice is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." Alcantarilla v. State Farm Mut. Auto. Ins. Co., 2015 WL 8785007, at *8 (W.D. Pa. Dec. 15, 2015) (McVerry, J.) Nevertheless, it is a factor to be weighed in the analysis.

Other Factors

The Court of Appeals has noted that, in ruling on § 1404(a) motions, courts have not limited their consideration to the convenience of parties, witnesses, or interests of justice but have considered many variants of the private and public interests protected by the language of § 1404(a). Jumara, 55 F.3d at 879. The court noted that:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

10

> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable law in diversity cases.

Id. at 879-80 (citations omitted).

Similarly, the Supreme Court has held that:

> In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations.[6] Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." § 1404(a).
>
> > [6]Factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (internal quotation marks omitted). Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Ibid. (internal quotation marks omitted).

Atlantic Marine, 134 S. Ct. at 581 & n.6.[8]

Defendant argues that its proposed venue would be a more convenient forum based primarily upon the Ohio Litigation which was previously filed in the Northern District of Ohio and which it contends is related to this case. In addition, it notes the judge's familiarity with the matter and contends that it would be a waste of judicial resources to litigate the claims in this

---

[8] The Supreme Court went on to modify the transfer analysis when a defendant relies upon a forum selection clause. Id. at 581-82. However, Defendant does not cite a forum selection clause in this case and therefore the regular balancing of factors applies.

district from the beginning. Plaintiff responds that this case is not related to the Ohio Litigation, which is not pending in any event because it is closed; that Defendant makes no argument in favor of the convenience of the Ohio court and indeed its principal place of business is in this district; that Defendant has not identified any witnesses who would be unable to appear to be in this district, nor has it identified any books and records that could not be produced here; that the judgment would be equally enforceable in both courts; that Pennsylvania law will govern the dispute; and that court congestion is more of a problem in Ohio.

Private Factors

As explained above, Plaintiff has chosen this forum, although this choice should be given only some deference because this is not its home forum; and Defendant has expressed a preference for the Northern District of Ohio. The other private factors are: where the claim arose, the convenience of the parties, the convenience of witnesses and the location of books and records. Plaintiff has not explained why this forum would be more convenient for it, but Defendant has not explained why the Ohio court would be more convenient for it.

Where the Claim Arose

Courts have recognized that the "most appropriate venue is generally 'where a majority of events giving rise to the claim arose.'" Alcantarilla v. State Farm Mut. Auto. Ins. Co., 2015 WL 8785007, at *8 (W.D. Pa. Dec. 15, 2015) (McVerry, J.) (quoting In re Amkor Tech, Inc. Sec. Litig., 2006 WL 3847488 (E.D. Pa. Dec. 28, 2006)). Plaintiff contends that the operative facts occurred in this district, where the contracts were negotiated and executed and where at least some of the plant sites are located (others are located elsewhere, but none in Ohio). Three of the projects at issue concern sites in Pennsylvania, while the others are in different states but not Ohio. Defendant responds that the same could be said of the Ohio Litigation: some projects

were to be performed in Pennsylvania and others elsewhere, but none in Ohio. It does not appear that the location where the projects were performed or were to be performed is an important consideration. Thus, this factor weighs against transfer, although not strongly.

### Convenience of Witnesses

The Court of Appeals has observed that one of the private factors is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Jumara, 55 F.3d at 879. This factor relates only to non-party witnesses; "The party witnesses are presumed to be willing to testify in either forum despite any inconvenience." Hillard v. Guidant Corp., 76 F. Supp. 2d 566, 570 (M.D. Pa. 1999). Plaintiff argues that the witnesses are either in Ohio or could easily travel there. Defendant has not identified any non-party witness who would be unavailable to appear in this Court. Nevertheless, it does point out that neither party had difficulty producing witnesses in the Northern District of Ohio in the Ohio Litigation. Thus, this factor weighs against transfer, albeit not strongly.

### Location of Books and Records

Plaintiff argues that the location of books and records is similarly limited to the extent that the files could not be produced in the alternative forum. Jumara, 55 F.3d at 879. Defendant does not contend that books and records could not be produced in this forum. Nevertheless, it does point out that books and records could be and in fact were easily produced in the Northern District of Ohio in the Ohio Litigation. Thus, this factor weighs against transfer, albeit not strongly.

### Public Factors

As noted above, the public factors include: the enforceability of the judgment, practical considerations, court congestion, local interest in the controversy, public policies of the fora, and

13

the applicable law in diversity cases. Plaintiff indicates that the factors of enforceability of the judgment and practical considerations are neutral and Defendant does not contend otherwise.

Court Congestion

Plaintiff contends that the court congestion factor weighs in favor of denying transfer: the number of civil and criminal cases pending in this Court in the twelve months prior to June 30, 2016 was 3,286, or an average of 329 for each of the 10 judges and the median time from the filing of a civil action to disposition was 6.3 months. By contrast, in the Northern District of Ohio, there were 4,826 cases pending before 11 judges, or an average of 439 cases for each judge, and the median time for disposition was 16.8 months. See http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2016.

This factor disfavors transfer, but as Judge Conti has observed: "Court congestion is not a decisive factor; it must be weighed against all other relevant factors, and district courts within the Third Circuit have not placed 'great importance' on this factor." York Group, Inc. v. Pontone, 2014 WL 3735157, at *13 (W.D. Pa. July 28, 2014).[9]

Relatedness of Ohio Litigation

Defendant argues that the Ohio Litigation, which arose out of the same agreements between the same parties, is related to this case and that this factor weighs in favor of transfer. "The presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other Jumara factors, such as the convenience of the parties and witnesses, would suggest the opposite." Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450, 459

---

[9] Plaintiff also argues that "the speed of adjudication is central here because the resolution of this matter is part of Allied's Plan of Reorganization" (ECF No. 19 at 19). However, Defendant notes that Allied's Disclosure Statement in the bankruptcy court explicitly stated that "the funding of the Plan is not dependent upon the outcome of the Litigation described at Section XVIII" (ECF No. 23 Ex. B at 13), which includes this case (Id. at 26).

14

(E.D. Pa. 2013) (citation omitted).

Plaintiff responds that this argument applies only if the alleged related case is still pending in the transferee forum, but here the Ohio Litigation is closed. Plaintiff cites a case in which the Second Circuit held that:

> Citing the "interest of justice" clause of section 1404(a), the district court granted the transfer motion on the ground that it would serve "judicial economy." This finding is unarguable as far as it goes, but it is not alone sufficient in this case. See In re Scott, 709 F.2d 717, 721 (D.C. Cir. 1983) (per curiam) ("Inconvenience to the court is a relevant factor but, standing alone, it should not carry the day"); Pfizer, Inc., 447 F.2d at 125 (although under the "unusual circumstances" of the case there was no abuse of discretion, "the convenience of the judge is ... not normally a factor to be weighed in considering a section 1404(a) motion"). At the time of the district court's transfer order, the Malia action had reached final judgment, and all appeals from that judgment had been exhausted. Because Malia was no longer pending, transfer did not allow for consolidation, or enable the respondents to defend in the same forum against all actions arising from the same transaction. Compare Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 219 (2d Cir. 1978) (no abuse of discretion in denying transfer from forum A to forum B where, among other considerations, two other actions by non-movant presenting identical legal issue were pending in forum A), cert. denied, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). The transfer order therefore effected a short-circuit that would bring about dismissal of the claim without consideration by anyone.
>
> Like the district court in Scott, the district court here failed to consider, as 28 U.S.C. § 1404(a) requires, "the convenience of parties and witnesses." § 1404(a). In two respects, this statutorily mandated consideration weighed heavily against transfer of Warrick's action from Connecticut to Pennsylvania. First, Warrick's choice of venue was "entitled to substantial consideration." A. Olinick & Sons, 365 F.2d at 444. Second, proceeding in Connecticut would facilitate the parties' access to the testimony of the trustees of the GE Plan and of the members of the accounting firm that audited the Plan during the merger, as well as to the documents that comprise and illuminate the Plan itself.

In re Warrick, 70 F.3d 736, 740-41 (2d Cir. 1995) (footnotes omitted).

Thus, Warrick is distinguishable in two important respects from this case: 1) the related action in the transferee district was no longer "pending" because all appeals had been exhausted, but here the Ohio Litigation is on appeal with the Sixth Circuit; and 2) other factors (the

15

plaintiff's choice which was entitled to substantial consideration and the access to certain witnesses and documents in the transferor district) weighed against transfer, but here the Plaintiff's choice is entitled to less deference and access to witnesses and documents are not significant factors.

Plaintiff also cites several cases in which courts declined motions to transfer on the ground that the related action in the transferee district was at a different stage of the litigation and thus consolidation of the cases would not promote efficiency or judicial economy. Cindrich v. Fisher, 2006 WL 1453053, at *3 (W.D. Pa. Mar. 15, 2006); Oracle Corp. v. epicRealm Licensing, L.P., 2007 WL 901543, at *5 (D. Del. Mar. 26, 2007); Central States, S.E. & S.W. Areas Pension Fund v. Davidson, 2007 WL 722889, at *3 (N.D. Ill. Mar. 8, 2007). Defendant replies that it is not contending that this case should be consolidated with the Ohio Litigation, but rather that Judge Lioi's familiarity with the parties and their history will aid the court in resolving the current dispute. Indeed, Defendant indicates that it intends to present dispositive motions regarding the same agreements addressed in the Ohio Litigation to the court and Judge Lioi would be in the best position to decide matters of res judicata and collateral estoppel.

Defendant notes that cases can be transferred to a court not only with a pending related case, but also "when a party has previously litigated a case involving similar issues and facts before the transferee court." D2L Ltd. v. Blackboard, Inc., 671 F. Supp. 2d 768, 784 (D. Md. 2009) (collecting cases). See also U.S. Ship Mgmt. Inc. v. Maersk Line, Ltd., 357 F. Supp. 2d 924, 938 (E.D. Va. 2005) ("where a party has previously litigated a case involving similar issues and facts a court in that district will likely be familiar with the facts of the case. As a matter of judicial economy, such familiarity is highly desirable."); Wheeling-Pittsburgh Steel Corp. v. United States Envt'l Protection Agency, 1999 WL 111459, at *4 (E.D. Pa. Mar. 3, 1999)

(Previously, plaintiff has litigated claims involving EPA's actions with regard to the Follansbee facility in the Northern District of West Virginia. Consequently, a court in that district will likely be familiar with the facts of the case. As a matter of judicial economy, such familiarity is highly desirable. Thus, this factor supports transferring the case.") Moreover, "evidence of plaintiff's attempt to avoid a particular precedent from a particular judge weighs heavily in the context of [the interest of justice] prong and would often make the transfer of venue proper." Evans v. Arizona Cardinals Football Club, LLC, 2016 WL 759208, at *4 (D. Md. Feb. 25, 2016) (citation omitted).

Plaintiff argues that this case is not related to the Ohio Litigation. It contends that:

> Only one (Fairless) of the ten project sites outlines in the current Complaint was involved in the [Ohio Litigation] and none of the ten project sites are in Ohio. The project sites relating to Counts I, III, and IV of the Complaint are as follows: Gary, Indiana; Great Lakes, Michigan; Granite City, Illinois; (Port Perry) Braddock, Pennsylvania; Clairton, Pennsylvania; (Minntac) Mount Iron, Minnesota[;] and Fairless Hills, Philadelphia. More of these sites – three (3) – are located in the Western District of Pennsylvania than any other judicial district, and the Fairless Works is also located in Pennsylvania.

(Ramun Decl. ¶ 6.) However, it does not dispute that the same agreements – the 2003 AIP, the 2004 AIP and the 2010 DSA – are alleged to have been breached and would be cited to resolve the claims. In addition, the Ohio Litigation similarly did not involve project sites in Ohio, yet Plaintiff chose to file suit there.

Defendant also notes that, in the bankruptcy action, Allied has acknowledged the similarity of the lawsuits in the context of requesting that it be allowed to retain its long-time counsel, Eckert, Seamans, Cherin & Mellott (ESCM), stating that:

> ESCM has already represented [Allied] with regard to numerous claims similar to the Appeal Matter and Breach of Contract Claims dating back to the initial dispute with U.S. Steel in 1986…. ESCM already has gained significant relevant knowledge and experience regarding the claims at issue through … their involvement in taking the depositions of the key personnel of both Allied and

17

> U.S. Steel in prior matters…. Such knowledge would be difficult and expensive
> for another firm to attempt to acquire…. ESCM was directly involved in the
> negotiation of, and has first-hand experience in litigating, the very agreements
> now at issue against U.S. Steel.

(ECF No. 23 Ex. A at 17-18 ¶ 62.) Thus, despite Plaintiff's contention in this case that it lacks any similarity to the Ohio Litigation, it seems to have acknowledged the similarity of the lawsuits in the bankruptcy action. This factor favors transfer of the case.

Applicable Law

Plaintiff contends that Pennsylvania law will govern the work awarded under the 2010 DSA, and that none of the project-specific scope documents and specifications were at issue in the Ohio Litigation. (Ramun Decl. ¶¶ 9-10.) However, it has not argued that there is a conflict between Pennsylvania law and Ohio law with respect to claims for breach of contract. Therefore, it does not appear that Judge Lioi will be unable to resolve breach of contract issues by applying Pennsylvania law if this case is transferred.

In conclusion, the main factors resolve as follows: Plaintiff has selected this forum, but its choice is entitled to somewhat reduced deference because Pennsylvania is not its home forum, and the location of its principal place of business equidistant between this forum and the transferee forum suggests either location would be equally inconvenient. Defendant's preference is the Northern District of Ohio. Where the facts underlying the claims arose may be Pennsylvania. The witnesses and documents can be produced in either forum. The court congestion factor disfavors transfer, but not strongly. However, the relatedness of the Ohio Litigation, which is still pending because it is on appeal with the Sixth Circuit,[10] and Judge Lioi's

---

[10] In addition, it is noted that on October 27, 2016, the Sixth Circuit entered an order placing the appeal in abeyance pending the expiration of the automatic stay or an order of the bankruptcy court lifting or otherwise modifying the stay for purposes of pursuing the appeal. Allied Erecting and Dismantling Co., Inc. v. United States Steel Corp., No. 15-4182 (6th Cir.), ECF No. 28.

familiarity with the parties and the agreements at issue, is a strong factor in favor of transfer that outweighs the other factors which weigh slightly against transfer.  Finally, it is noted that this case has not yet had a Rule 16 case management conference and thus the "interest of justice" is not affected by transferring the case at this early stage of the proceedings.  For all of these reasons, the balance of factors favors transfer of this case to the Northern District of Ohio, Eastern Division, where Judge Lioi has experience with these parties and these agreements.

Therefore, it is recommended that the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404 filed by defendant, United States Steel Corporation (ECF No. 8) be granted and that this action be transferred to the United States District Court for the Northern District of Ohio, Eastern Division, based on its relatedness to Civil Action No. 4:12-cv-1390 and Bankruptcy Case No. 4:16-bk-40675.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by December 6, 2016.  Any party opposing the objections shall file a response by December 20, 2016.  Failure to file timely objections will waive the right of appeal.

                Respectfully submitted,

                s/Robert C. Mitchell
                ROBERT C. MITCHELL
                United States Magistrate Judge

Dated: November 22, 2016