IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLIED ERECTING AND DISMANTLING CO., Inc., ) ) ) Plaintiff, ) ) v. ) ) UNITED STATES STEEL ) CORPORATION, ) ) Defendant. ) | Civil Action No. 16-1379 |

### MEMORANDUM ORDER

Pending before the Court is Defendant United States Steel Corporation's ("U.S. Steel") Motion in Limine to Exclude Parol Evidence. (ECF No. 156.) For the reasons discussed below, U.S. Steel's motion will be denied.

**I.    RELEVANT PROCEDURAL BACKGROUND**

In this lawsuit, Plaintiff Allied Erecting and Dismantling Co., Inc. ("Allied") alleges, among other things, that U.S. Steel breached the parties' 2010 Dismantling Services Agreement ("2010 DSA") by failing to honor Allied's "last look" rights on various projects. As the Court explained in its Memorandum Opinion that addressed U.S. Steel's *Daubert* motion, the 2010 DSA provides in relevant part that:

> Allied had to provide U.S. Steel with a "project cost estimate" setting forth its costs to perform any dismantling work. The parties would then negotiate to come to mutually agreeable terms. If an agreement was reached, Allied would perform work on a "negotiated" basis ("Negotiated Projects"). Allied performed all Negotiated Projects on a "target gross margin basis," under an agreed formula and profit margins. If the parties were unable to negotiate the terms however, U.S. Steel could competitively bid the work and invite Allied to participate in the bidding. After the work was competitively bid, Allied had "last look" rights that allowed it to match the terms of the "most acceptable bid" and perform the work.

(ECF No. 150 at 2 (citations omitted).)

In seeking partial summary judgment at an earlier stage in this proceeding, U.S. Steel questioned the methodology employed by Allied's damages expert with respect to Allied's initial project cost estimates. Based upon those estimates, U.S. Steel argued that Allied could not have profitably performed some of the "last look" projects and, therefore, could not have sustained any damages. Allied countered that its initial project cost estimates were typically higher than its subsequent "last look" contract price. According to Allied, this was because those estimates were calculated as a worst-case scenario using an agreed formula, mark-ups, and profit margins which did not apply to competitively bid work.

In rejecting U.S. Steel's motion for partial summary judgment, the Court explained that "while U.S. Steel may certainly question the methodology and damage calculations of Allied's expert in a *Daubert* motion or at trial, it has not shown that Allied's damage calculations fail as a matter of law." (ECF No. 121 at 28.)

U.S. Steel later filed a *Daubert* motion seeking to exclude the testimony and opinions of Allied's expert witness. Allied's initial project cost estimates were again at issue. While acknowledging that Allied's expert had testified that those estimates were calculated on a worst-case basis, U.S. Steel argued that the expert's testimony was unreliable because he used those estimates when it inured to Allied's benefit to do so. In denying U.S. Steel's *Daubert* motion, the Court noted that whether the initial project cost estimates were calculated as a worst-case approach is a disputed fact. (ECF No. 150 at 8.) Therefore, the Court ruled that Allied's expert may rely on that factual assumption and that U.S. may challenge this reliance at trial. (*Id.* at 8–9.)

In its pending motion in limine, U.S. Steel seeks to preclude Allied from offering any evidence with respect to whether those estimates were worst-case because it represents inadmissible parol evidence.

## II.    DISCUSSION

As indicated in a footnote, U. S. Steel moves to exclude parol evidence related to all of the contracts at issue in this case but focuses on the 2010 DSA because it claims that Allied has repeatedly attempted to alter its terms. Allied denies having done so or that it intends to introduce any such evidence at trial.

As an initial matter, this case will be tried as a bench trial. As such, issues as to the admissibility or exclusion of evidence are most appropriately raised in context and resolved during the trial, particularly with respect to a motion to exclude unspecified parole evidence. The right of the parties to raise any such objection at trial are expressly reserved. However, the specific parol evidence issue raised in U.S. Steel's motion will be addressed here.

In the absence of fraud, accident or mistake, earlier oral representations, understandings or agreements are superseded by the subsequent written contract, and parol evidence is inadmissible to vary, modify or supersede the written contract. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004).[1] Moreover, as U.S. Steel notes, the inclusion of an integration clause in a contract is indicative of the parties' intent that the writing is intended to be their entire agreement. *Id.* The 2010 DSA includes an integration clause. (2010 DSA § 4(F).) If the parties have integrated their agreement into a single writing, "all prior negotiations and agreements in regard to the same subject matter, whether oral or written, are excluded from consideration." *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 233 (3d Cir. 2001). Thus, once it is determined that a single integrated agreement exists, "the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always

---

[1] Pennsylvania substantive law applies in this diversity action. *See, e.g.*, *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

inadmissible to explain or vary the terms of the contract." *Yocca*, 854 A.2d at 436. "[T]he parol evidence rule bars only prior or contemporaneous oral agreements, not subsequent ones." *Nicolella v. Palmer*, 248 A.2d 20, 23 (Pa. 1968).

U.S. Steel argues that the parol evidence rule bars Allied from offering evidence that U.S. Steel directed Allied to calculate the initial project cost estimates as a worst-case approach because by doing so, Allied seeks to alter the terms of the 2010 DSA. According to U.S. Steel, Allied claims that its initial project cost estimates are unreliable because they were artificially inflated by Allied at U.S. Steel's direction. In addition, Allied also asserts that these estimates are applicable only to the Negotiated Projects and were calculated as a worst-case basis because the 2010 DSA does not allow change orders for the Negotiated Projects. These two contentions, U.S. Steel argues, are directly refuted by the following language of the 2010 DSA:

> [Allied's] Final Total Project Cost on any [Negotiated] Project shall not be in excess of the Estimated Project Cost shown on the Final Project Cost Estimate, unless there has been a formal written change order issued by [U.S. Steel] due to (a) a change in the scope of the project; or (b) [U.S. Steel's] acceptance of a change in or to the work methods, the schedules, work scopes and/or dismantling plans submitted by [Allied].

2010 DSA § 3(H)(iii).

In opposing U.S. Steel's motion, Allied asserts that it is not attempting to alter the terms of the 2010 DSA. Further, it does not contend that the project cost estimates are unreliable; rather, its position is that they are not relevant in the way that U.S. Steel suggests. According to Allied, it is U.S. Steel, not Allied, that is attempting to use this evidence to suggest that Allied could not have made a profit on the Count I "last look" projects, and therefore, could not have sustained any damages on these projects. If U.S. Steel offers such testimony, Allied may present evidence that the estimates were intentionally conservative at the recommendation of U.S. Steel in order to avoid using change orders.

With respect to the specific objection raised by U.S. Steel, it does not explain how Allied's first contention—that the initial project cost estimates are applicable only to the Negotiated Projects—is an extra-contractual position. Indeed, as a plain reading of the 2010 DSA makes clear, and this Court has explained in its *Daubert* opinion, the initial project cost estimates are applicable only to the Negotiated Projects. (ECF No. ECF No. 150 at 2 (citing the 2010 DSA §§ 3(B), 3(C), 3(H)).)

As to Allied's second contention, U.S. Steel mischaracterizes Allied's position. As Allied notes, it does not claim that change orders were not allowed for the Negotiated Projects under the 2010 DSA, which would indeed be an extra-contractual stance. Rather, Allied claims that it was to avoid this process that Allied, allegedly under U.S. Steel's directive, utilized more conservative figures in developing the initial project cost estimates. (ECF No. 141 at 4.) The Court has already ruled that this is a disputed fact that must be resolved at trial. (ECF No. ECF No. 150 at 8–9.)

Throughout this litigation U.S. Steel has argued that because the initial project cost estimates suggest that Allied could not have profitably performed the Count I projects, it could not have violated Allied's "last look" rights under the 2010 DSA. Should U.S. Steel present this position at trial, Allied asserts, it may counter with evidence and testimony reflecting that those estimates were intentionally conservative, allegedly at U.S. Steel's recommendation, in order for U.S. Steel to avoid issuing change orders. This is not an extra-contractual position. On the contrary, this evidence is consistent with the plain language of the 2010 DSA.

Based on the parties' current positions regarding the use of this evidence, the Court will deny U.S. Steel's motion in limine. However, the parties may assert objections at trial if they contend that this evidence is being offered for an impermissible purpose, and the Court reserves ruling on any such objections.

Therefore, this 19th day of October, 2020, it is ORDERED that United States Steel Corporation's Motion in Limine to Exclude Parol Evidence (ECF No. 156) is DENIED.

BY THE COURT:

/s/ Patricia L. Dodge
Patricia L. Dodge
United States Magistrate Judge