IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLIED CONSOLIDATED INDUSTRIES, INC., for and on behalf of ALLIED ERECTING AND DISMANTLING CO., INC., <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES STEEL CORPORATION, <br><br> Defendant. | Civil Action 2:16-1379-PLD |

## MEMORANDUM OPINION AND ORDER

Before the Court are the post-trial briefs of Plaintiff Allied Erecting and Dismantling Co., Inc. ("Allied")[1] and Defendant United States Steel Corporation ("U.S. Steel") regarding the award of prejudgment interest on claims decided in Allied's favor. (ECF Nos. 215, 216, 219.)

### I.   Relevant Procedural History

Following a bench trial, the Court issued its findings of fact and conclusions of law (ECF No. 212 (the "Opinion")) and found in favor of Allied with respect to the following breach of contract claims and awarded the following damages (exclusive of prejudgment interest):

- Count 1 as to the following projects:
    - Great Lakes/Zug Island Sulfate Building (Phase 4, Part B): $120,356.00
    - Granite City Baghouse Platform: $13,966.00
    - Port Perry COG Pipeline Removal: $77,609.00
    - Clairton C-3064 Flushing Liquor Surge Tank: $19,420.00
    - Great Lakes/Zug Island Crusher Screening Building and Conveyor Junction House: $276,015.00

- Count II in the amount of $915,314.00

---

[1] A Motion to Substitute Plaintiff and Modify Caption (ECF No. 205) was granted on June 8, 2021. The substituted plaintiff is "Allied Consolidated Industries, Inc., for and on behalf of Allied Erecting and Dismantling Co., Inc." and the caption has been modified accordingly. Throughout this opinion, however, Allied Erecting and Dismantling Co. will be referred to as "Allied." As necessary, the substituted plaintiff will be referred to as "Allied Consolidated."

- Count III as to the following projects:
    - Great Lakes Sulphate Building, Change Order Request No. 1: $14,645.64
    - Gary #7 Blast Furnace Stockhouse Bins
        - Change Order Request No. 1: $39,560.00
        - Change Order Request No. 2: $18,340.00
        - Change Order Request No. 3: $28,132.00
    - Minntac
        - Change Order Request No. 2: $14,717.00
        - Scrap value:  $564,355.00

- Count IV as to the following projects:
    - Great Lakes C3 Furnace Project: $240,388.00
    - Great Lakes #2 Coke Battery Screening Station: $28,412.00

- Count V in the amount of $1,387,475.00

(ECF No. 212 at 75–76.)  The Court found in favor of U.S. Steel with respect to Allied's remaining claims.  (*Id.* at 76–77.)

Because the Court concluded that questions remained as to whether Allied is entitled to prejudgment interest on any of these damage awards (ECF No. 212 at 75), it ordered supplemental briefing and revised calculations through December 17, 2022.  (ECF No. 213).

Allied seeks prejudgment interest on each of the claims for which it was awarded damages. (ECF No. 215 & 215-1.)  U.S. Steel only objects to the award of prejudgment interest on the value of ferrous and non-ferrous scrap awarded as damages with respect to Counts I, III and V. (*See* ECF No. 216 at 5 n.4 (No objection on "Count I last look lump sum amounts, or to any other Allied prejudgment interest request that is not specifically objected to"); ECF No. 216 at 1 n.1. (No objection to prejudgment interest to Counts II and IV).)

II.  **Applicable Law**

A.  **Pennsylvania Law on Prejudgment Interest**

Prejudgment interest is "'compensation allowed to the creditor for delay of payment by the debtor,' and is said to be impliedly due 'whenever a liquidated sum of money is unjustly withheld.'" *TruServ Corp. v. Morgan's Tool & Supply Co.*, 39 A.3d 253, 264 (Pa. 2012).

Pennsylvania follows Section 354 of the Restatement of Contracts with respect to prejudgment interest.[2] *Cresci Construction Services, Inc. v. Martin*, 64 A.3d 254, 260 (Pa. Super. 2013).  Under Section 354,

> (1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.
> (2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due.

Restatement (Second) of Contracts, § 354 (1981).  An award of prejudgment interest under Section 354(1) is a matter of right, while an award of prejudgment interest under Section 354(2) is within the Court's discretion.  *TruServ Corp.*, 39 A.3d at 264–65.  Thus, "[a] court has discretion to award or not award prejudgment interest on some claims, but must or must not award prejudgment interest on others." *Fidelity Bank v. Com. Marine and Gen. Assurance Co.*, 592 F. Supp. 513, 522 (E.D. Pa. 1984) (citations omitted).

To determine whether the award of prejudgment interest is mandatory or discretionary, the Court "must identify the nature of the breach" and "focus on the contract between [the parties] to determine if it contains a fixed standard by which to calculate damages." *Cresci*, 64 A.3d at 260.

---

[2] The legal rate of interest in Pennsylvania is 6 percent per annum. *See* 41 P.S. § 202.

### B. Prejudgment Interest as a Matter of Right

There are four circumstances in which courts must award prejudgment interest as a matter of right. *Cresci*, 64 A.3d at 264–65. Courts must examine the contract to determine "whether the contract was to pay, or render a performance for, a monetary amount defined in the contract; render a performance for a monetary amount that can be calculated from standards set forth in the contract; or render a performance for a monetary amount calculated from the established market prices." *Id.* (citing *Black Gold Coal Corp. v. Shawville Coal Co.*, 730 F.2d 943–44 (3d Cir. 1984), *Fernandez v. Levin*, 548 A.2d 1191, 1993 (Pa. 1988), and Restatement (Second) of Contracts § 354 & cmt. c (1981)). "The disputed amount must be either specified in the contract or ascertained from the terms of the contract such that at the time of the breach, the breaching party can proffer a tender." *Id.* (citing *Frank B. Bozzo, Inc. v. Electric Weld Div. of Fort Pitt Div. of Spang Indus., Inc.*, 498 A.2d 895, 898–99 (Pa. Super. 1985), *Daset Mining Corp. v. Indus. Fuels Corp.*, 326 Pa. Super. 14, 473 A.2d 584, 595 (Pa. Super. 1984), and Restatement (Second) of Contracts § 354 & cmt. c (1981)).

"Comment c to Restatement (Second) of Contracts § 354 underscores that prejudgment interest is awarded as a matter of right only on breach-of contract damages ascertainable from the terms of the contract." *Cresci*, 64 A.3d at 259.

> c. Where amount due is sufficiently definite. Under the rule stated in Subsection (1), a party is not chargeable with interest on a sum unless its amount is fixed by the contract or he could have determined its amount with reasonable certainty so that he could have made a proper tender. Unless otherwise agreed, interest is always recoverable for the non-payment of money once payment has become due and there has been a breach. This rule applies to debts due for money lent, goods sold or services performed, including installments due on a construction contract. The fact that the breach has spared some expense that is uncertain in amount does not prevent the recovery of interest. The sum due is sufficiently definite if it is ascertainable from the terms of the contract, as where the contract fixes a price per unit of performance, even though the number of units performed must be proved and is subject to dispute. The same is true, even if the contract does not of itself

> create a money debt, if it [i.e., the contract] fixes a money equivalent of the performance. It is also true, even if the contract does not fix a money equivalent of the performance, if such an equivalent can be determined from established market prices. The fact that the extent of the performance rendered and the existence of the market price must be proved by evidence extrinsic to the contract does not prevent the application of these rules.

Restatement (Second) of Contracts § 354 cmt. c (1981).

"The disputed amount, in other words, must be liquidated at the time of the breach as a prerequisite for prejudgment interest." *Id.*; *See also TruServ Corp.*, 39 A.3d at 264 ("[T]he debt must have been liquidated with some degree of certainty and the duty to pay it must have become fixed….).

### C.  Prejudgment Interest as a Matter of Discretion

Otherwise, a court may award prejudgment interest as a matter of discretion in light of all the circumstances. *USI Ins. Services Nat'l, Inc. v. Frieman*, 273 A.3d 1039, 2022 WL 390662, at *6, n.11 (Pa. Super. 2022) (citing *Cresci*, 64 A.3d at 260 and *Frank B. Bozzo, Inc. v. Electric Weld Div. of Fort Pitt Div. of Spang Indus., Inc.*, 498 A.2d 895, 901 (Pa. Super. 1985)).

"[C]ompensation for delay in the nature of interest may [] be awarded if, in the circumstance of the case[,] justice so requires, . . . [such that] the plaintiff will not be fully compensated unless he receives compensation for the delay." *Bozzo*, 498 A.2d at 896, 900 (citation and internal quotation marks omitted). "In other words, the plaintiff has suffered injuries that, for the plaintiff to be fully compensated for the loss from the breach, requires an interest award 'added for the delay in obtaining the award of damages.'" *USI Ins.*, 2022 WL 390662, at *6 (quoting *Bozzo*, 498 A.2d at 899 (citation omitted)).

### III. Discussion

#### A. The Parties' Arguments

Allied argues that it is entitled to prejudgment interest as a matter of right from the date that performance was due on each claim. (ECF No. 215.) In seeking such prejudgment interest, Allied argues that each breach by U.S. Steel was a failure to render a performance that had an ascertainable monetary value.[3] Allied calculated the award of prejudgment interest using the statutory rate (6%) starting from the day that the performance was due, applying some conservative estimates. (*Id.* at 14–17.) In the alternative, Allied contends that it should be awarded discretionary prejudgment interest to disgorge from U.S. Steel any unjust enrichment. (*Id.* at 17–19.)

U.S. Steel objects only to the award of prejudgment interest on the value of any scrap—ferrous or non-ferrous—that was awarded in Counts I, III and V. (ECF No. 216.) U.S. Steel contends that prejudgment interest is not awardable as of right for the ferrous and non-ferrous scrap, because value of the scrap was not determinable from the contracts and further depended on when (if ever) Allied chose to sell the scrap. (*Id.* at 5–7.) U.S. Steel further argues that Allied should not be awarded any discretionary prejudgment interest, because it would be a windfall to Allied who may (or may not) have decided to sell its scrap at any time in the future. (*Id.*) Finally, U.S. Steel also proposes two alternative calculations: (1) prejudgment interest calculated only on the amount of Fairless scrap that U.S. Steel sold to a third party; or (2) prejudgment interest calculated assuming that Allied would have sold an equal portion of scrap for each project in each of the years. (*Id.* at 14–15.)

---

[3] Both parties discuss how issues related to prejudgment interest were addressed in the lawsuit filed in the Northern District of Ohio, Eastern Division, Case No. 4:12-CV-1390 (the "Ohio Case"). (ECF No. 215 at 7–13; ECF No. 216 at 9–10.) However, neither party has shown how (and to what extent) the actions taken in the Ohio Case are preclusive as to the issues in this case.

The Court granted Allied leave to file a reply brief. (ECF No. 218.) In its reply, Allied argues that, under Pennsylvania law, the scrap value was determinable as of the date of breach based on established market prices. (ECF No. 219 at 3–5.) Allied further refutes U.S. Steel's factual arguments that the contracts do not include mechanisms for scrap valuations and that Allied did not regularly sell its scrap. (*Id.* at 5–8.) Finally, it contends that if the Court were to determine that a mandatory award of prejudgment interest does not apply, the Court should use its discretion to award prejudgment interest. (*Id.* 8–10.)

### B. The Value of the Ferrous and Non-Ferrous Scrap Was Sufficiently Certain Such that the Award of Prejudgment Interest is Mandatory

As outlined in this Court's Opinion, in each of Counts I, III, and V,[4] U.S. Steel was found to have breached a contract and Allied was awarded, as part of its lost profit damages, the value of ferrous and non-ferrous scrap that it would have been received had Allied been able to perform the contract. (*See generally*, ECF No. 212.) The various contracts were addressed in the Opinion. (*Id.*) Further, the testimony and evidence regarding the methodology used to quantify and price the scrap for each Count was heavily debated at trial. (*Id.*) Thus, the Court can resolve the issue of prejudgment interest (ECF Nos. 215, 216 & 219) without repeating the factual and procedural issues which are analyzed and resolved in the Opinion.

With respect to each of the applicable contracts, the provisions regarding the ferrous and non-ferrous scrap are clearly not a contract "to pay, or render a performance for, a monetary amount defined in the contract." *Cresci*, 64 A.3d at 264–65. Thus, the Court considers whether, with respect to the ferrous and non-ferrous scrap, the contracts are to "render a performance for a monetary amount that can be calculated from standards set forth in the contract; or render a

---

[4] As discussed above, U.S. Steel does not contest the award of prejudgment interest on Counts II and IV.

performance for a monetary amount calculated from the established market prices." *Id.* Allied argues the latter.[5] (ECF No. 212 at 4; ECF No. 219 at 4.)

The value of the scrap that Allied was deprived of by U.S. Steel is the product of the price of the scrap and the quantity[6] of scrap, which was ultimately proven with reasonable certainty at trial. *Brisbin v. Superior Valve Co.*, 398 F.3d 279, 294 (3rd Cir. 2005). U.S. Steel argues that the value was unliquidated and indeterminable at the time of breach because the "scrap merely had ***future value*** to Allied, which it would realize ***only*** when it sold the scrap." (ECF No. 216 at 1 (emphasis original).) According to U.S. Steel, Allied would only "consider" selling non-ferrous

---

[5] However, as Allied points out in its reply brief, the applicable contracts *do* provide a method to value ferrous and non-ferrous scrap, which would be another reason that prejudgment interest is awardable. (ECF No. 219 at 4.) Although these provisions are admittedly nuanced, the value of the ferrous and non-ferrous scrap was ascertainable based on the applicable contract provisions at the time of the breach. Essentially, Allied could sell ferrous scrap (1) to U.S. Steel for the price that U.S. Steel was paying for that month ("current scrap market pricing") or (2) to a third party at another price, subject to U.S. Steel's right of first refusal. (For Counts I and III, *see* Ex. 7, Attachment 8; for Count V, *see* Ex. 6 § IV(B), Attachment 1.) Thus, in the case of ferrous scrap, U.S. Steel has the ultimate decision about the value of the ferrous scrap from its own data or by exercise of its right of first refusal (and it would not be unreasonable to presume that the third parties would value the ferrous scrap at or around the American Metal Markets value). With respect to non-ferrous scrap, Allied could either (1) sell the non-ferrous scrap during the term of the project to a third parties for a price or (2) choose not to sell the non-ferrous scrap, in which case such scrap would be valued by the parties based on the month in which the non-ferrous scrap was shipped from the project by applying the formula that was agreed upon between the parties. (For Counts I and III, *see* Ex. 7, Attachment 9; for Count V, *see* Ex. 6 § IV(B), Attachment 2.) Thus, on the day of the breach, the price was determinable by at least the second method (given that U.S. Steel's breach prevented the selling and shipping of the scrap). U.S. Steel's counterfactual argument that it would not be able to know if or when Allied would sell its ferrous and non-ferrous scrap does not mean that the scrap, at the time of the breach, did not have a readily ascertainable value. For each category of scrap (ferrous and non-ferrous), at least one of the options detailed in each applicable contract provides an ascertainable value. Further, as discussed in this Memorandum Opinion, even if the parties' contracts did not specify the value of the ferrous and non-ferrous scrap, the value is readily ascertainable on the day of the breach based on the American Metal Markets index.

[6] U.S. Steel focuses primarily on the fluctuating market *prices* of the scrap, which in turn changes the value of the scrap awarded for each Count. (*See generally*, ECF No. 216.) To the extent U.S. Steel is also arguing that the *quantity* of scrap was not liquidated at the time of the breach, this argument is also rejected. Any contention that U.S. Steel did not know (or could not have known) the weight of the scrap at the time of the breach is unconvincing given that the quantity of scrap was ascertainable either from U.S. Steel's own actual scrap weights or Allied's estimates (*see* ECF No. 212 at 22). *See* Restatement (Second) of Contracts § 354 cmt. c (1981) ("The fact that the extent of the performance rendered and the existence of the market price must be proved by evidence extrinsic to the contract does not prevent the application of these rules."). With respect to Allied's estimates, although each of the projects in Counts I and III were "last look projects" (which is calculated on a lump sum basis), the "last look project" phase was only initiated *after* the "negotiated project" phase between Allied and U.S. Steel did not result in an agreement. (ECF No. 212 at 7.) As part of the "negotiated project" process, the "Project Cost Estimate" itemized, among other items, the estimated amount of revenue from ferrous and non-ferrous scrap. (*Id.*; *see also* Ex. 7 §§ 3(B)–(E) & Attachment 2.) Further, at trial, it was shown that Allied's estimates were consistently *lower* than the actual scrap total for those projects where actual scrap totals were available. (ECF No. 212 at 22.)

8

scrap when it reached a certain "target" price and had the option to choose when (if ever) to sell the ferrous scrap. (ECF No. 216 at 6.) Thus, U.S. Steel argues that because "[a]s the market for scrap significantly fluctuates by month and year, and it is within Allied's sole discretion to determine when it sells the scrap, there is no way of ascertaining what the value of Allied's scrap would be until the date of sale." (*Id.*)

With respect to the price of the scrap, the Court has already found that "[i]t is undisputed that American Metal Markets is a recognized industry source for the valuation of ferrous and non-ferrous materials." (ECF No. 212 at 22–23.) Indeed, the price of the ferrous and non-ferrous scrap on the day of each of U.S. Steel's breaches was readily ascertainable from an established market price.[7] U.S. Steel's argument that Allied may or may not have chosen to sell the ferrous and non-ferrous scrap at a later date is a red herring. (ECF No. 212 at 6.) In fact, the operative issue is determining Allied's damages at the point in time when U.S. Steel breached the applicable contract. A component of those damages was the deprivation of the ownership and possession of the ferrous and non-ferrous scrap that it was entitled to under the applicable contract. The ferrous and non-ferrous scrap has a value at the date of the breach—regardless of whether Allied would (or would not) have made use of the scrap by selling it.

Thus, the Court finds that the value of the ferrous and non-ferrous scrap was sufficiently certain such that the award of prejudgment interest is mandatory in each Count. *See Brisbin v. Superior Valve Co.*, 398 F.3d 279, 294 (3d Cir. 2005) (noting that prejudgment interest would be allowable on lost profits provided that lost profits were established with reasonable certainty); *see also D.A. Nolt, Inc. v. City of Lancaster*, 256 A.3d 503, 2021 WL 1904572, at *7 (Pa. Commw.

---

[7] Further, much of the evidence at trial showed how the parties relied on American Metal Markets in their own pricing negotiations.

Ct. 2021) (noting that damage award for lost profit and overhead was calculable form the date of invoice was reasonably ascertainable from bid documents that were incorporated into the contract).

### C. Interest Calculations

U.S. Steel argues that prejudgment interest should not be awarded for any ferrous or non-ferrous scrap value awarded in Counts I, III, and V. Alternatively, U.S. Steel provides two other methods of calculation in the event that the Court determines that Allied is entitled to prejudgment interest. Having considered them, the Court finds that neither alternative is appropriate. The first, which limits the award of prejudgment interest to only the scrap that U.S. Steel's sold from Fairless scrap to a third-party (ECF No. 216 at 14–15), not only calculates prejudgment interest for only a portion of the scrap value awarded across Counts I, III, and V but also fails to reflect the date on which U.S. Steel breached the applicable contract. Similarly, U.S. Steel's second alternative, which assumes "that Allied would have sold an equal portion of the scrap from each project in each of the years between the date of the court-determined breach and date of judgment" (ECF No. 216 at 15), does not reflect the date of the breach of the applicable contract.[8] The Court therefore rejects both of U.S. Steel's alternatives.

While U.S. Steel objects to the award of prejudgment interest to the ferrous and non-ferrous scrap based on Pennsylvania law, U.S. Steel has not asserted any objections to Allied's actual mathematical calculations applying such principles. The Court has reviewed such calculations and finds that they accurately apply 6% simple interest to the damage award starting from the date of each relevant breach to December 17, 2022. (ECF No. 215-1.) The Court further notes that, as outlined in Allied's brief on the issue of prejudgment interest, Allied's start date for

---

[8] Although U.S. Steel argues that this approach more appropriately reflects potential sales that Allied would have made in the future up until present day, this argument is not convincing given that Allied was experiencing financial distress in 2014 and ultimately filed for bankruptcy in April 2016. (ECF No. 219 at 10.)

10

the calculation of prejudgment interest is conservatively calculated to reflect the payment terms of each project. (ECF No. 215 at 15–17.)

Thus, the Court will award prejudgment interest based on the calculations provided by Allied as modified to reflect today's date.[9] (*See* ECF No. 215-1.)

### IV. Conclusion

For the reasons set forth herein, the Court finds that the award of prejudgment interest is mandatory under Pennsylvania law and that awards the following damages to Allied, inclusive of prejudgment interest.

| Count | Damage Amount | Prejudgment Interest through December 14, 2022 | Total Damages |
|---|---|---|---|
| Count I | $ 507,366.00 | $ 262,134.80 | $ 769,500.80 |
| Count II | $ 915,314.00 | $ 466,926.56 | $ 1,382,240.56 |
| Count III | $ 679,750.00 | $ 340,226.81 | $ 1,019,976.81 |
| Count IV | $ 268,800.00 | $ 150,690.43 | $ 419,490.43 |
| Count V | $ 1,387,475.00 | $ 729,394.07 | $ 2,116,869.07 |
| **Total** | **$ 3,758,705.00** | **$ 1,949,372.67** | **$ 5,708,077.67** |

---

[9] The Court asked the parties to provide calculations for prejudgment interest through December 17, 2022 to allow sufficient time to resolve the prejudgment interest issue. The Court is issuing this decision on December 14, 2022 and has therefore subtracted three days of the "daily interest" column in each of Allied's calculations from its award of prejudgment interest. (*See* ECF No. 215-1 at 5–9 (The sum of the "Daily Interest" awarded for all Counts is $1302.11 (Count I–$83.40; Count II–$150.48; Count III–$111.73; Count IV–$44.19; and Count V–$912.31).) The Court has not rounded its calculations, because some rounding appears to have already occurred in Allied's calculations. (ECF No. 215 at 4 (For example, adding up the "Total Damages" for each Count leads to the result of $5,711,98**4**, but Allied's brief requests one dollar less ($5,711,98**3)** in its "Total Damages").)

Dated: December 14, 2022            BY THE COURT:

                                              s/ Patricia L Dodge
                                              PATRICIA L. DODGE
                                              United States Magistrate Judge